IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SEO JEONG WON also known as JASMINE SEO, | ) ) ) | CIVIL NO. 07-00606 JMS/LEK CIVIL NO. 08-00158 JMS/LEK |
| Plaintiff, | ) ) ) | ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION |
| vs. | ) ) | FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT V OF |
| RAYMOND L. ENGLAND; JOSEPH SWEENEY; and USA FEDERAL CREDIT UNION, | ) ) ) ) | THE SECOND AMENDED COMPLAINT |
| Defendants. | ) ) ) | |
| _____ | ) ) | |
| RAYMOND ENGLAND, | ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| USA FEDERAL CREDIT UNION, a Federal Charter credit union, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

## ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT V OF THE SECOND AMENDED COMPLAINT

## I. INTRODUCTION

In this consolidated action, Plaintiff Seo Jeong Won ("Plaintiff")

alleges that Defendant Raymond L. England ("England") defrauded her and her

mother, Park Young Ja ("Park"), of more than a million dollars through a scheme where England purported to assist them in transferring Park's money to Hawaii to purchase real property.  The funds at issue have since been interpled to this court ("Interpleader Funds") by USA Federal Credit Union ("FCU") from England's account.

Currently before the court is Plaintiff's Motion for Partial Summary Judgment on Count V of the Second Amended Complaint ("SAC") for constructive and/or resulting trust and/or equitable lien on the basis that there is no genuine issue of material fact that Plaintiff is entitled to the Interpleader Funds. Based on the following, the court DENIES Plaintiff's Motion.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

Plaintiff and Park, both Korean nationals, became acquainted with England in 2007 through Joseph Sweeney ("Sweeney"), who was dating Plaintiff at the time.  Pl.'s Ex. 1, Sweeney Decl. ¶ 6.  In April 2007, Sweeney, Plaintiff, and Park visited Hawaii, where Plaintiff and Park expressed interest in investing in Honolulu condominiums.  *Id.*  During their visit, Sweeney introduced Plaintiff and Park to Norman Rothstein ("Rothstein"), who showed them several potential investment properties.  *Id.*; Pl.'s Ex. 2, Rothstein Decl. ¶ 4.  Plaintiff and Park

were not interested in purchasing any of the condominiums they inspected, but requested that Rothstein continue to act on their behalf in finding potential condominiums to purchase.  Pl.'s Ex. 2, Rothstein Decl. ¶ 5.  To that end, Sweeney asked for, and Rothstein provided, a deposit slip for his bank account so that Park could transfer money to Rothstein to purchase property.  *Id.*

Rothstein believed that Plaintiff and Park would transfer enough money for an earnest money deposit (*i.e.*, $5,000-10,000) in the event Rothstein found an apartment that they wanted to bid on.  *Id.*  Back in Korea, however, Sweeney, Plaintiff, Park, and England discussed how to transfer $2,000,000 of Park's funds to Hawaii, and England offered his assistance.  Pl.'s Ex. 1, Sweeney Decl. ¶ 7.  Park, England, and Sweeney ultimately signed a document entitled "Promissory Agreement Investment Note for Hawaii As of APR 2007," (the "Agreement"), which was witnessed by Plaintiff.  *Id.*; Pl.'s Ex. 1, Sweeney Decl. ¶ 7.  The Agreement provides:

> This Agreement is between Park, Young Ja Ph.D, currently a citizen of the Republic of Korea, and Joe Sweeney and associates, citizens of the USA.  The following named associates, **Mr. Raymond England** are hereto a party of the agreement in transferring Park, Young Ja's monetary funds to Hawaii in order to purchase condominiums from Norman Rothstein.  An agreed amount of TWO Million US Dollars are to be transferred to Mr. Norman Rothstein, First Hawaiian Bank account for Park, Young Ja. . . .

Pl.'s Ex. 3.

The Agreement contemplates that Park would purchase Hawaii property within a year, or at her election she could receive back her monies less 25% of any interest accrued:

> 1. . . . This agreement must be executed within 12 months of [April 25, 2007] . . . .
>
> 2.  Upon default in this promissory note, or any part thereof, when due, the holder hereof at his/her election, in this case Park, Young Ja may declare that she is unable to commit to the agreed upon Promissory Note.  If no purchase of two condominiums is made within the agreed time frame, this note becomes due and Park, Young Ja's deposit becomes payable for the full face value deposited into the First Hawaiian Bank less 25% of any interest accrued.  This amount is to be paid to Mr. Sweeney.

*Id.* ¶¶ 1-2.

Finally, the Agreement includes a provision in case of death of Sweeney or Park:

> 5.  In the event of the death of Mr. Joseph Sweeney or Park, Young Ja, this agreement and note automatically becomes due and Park, Young Ja's deposit becomes payable for the full face value deposited into the First Hawaiian Bank less 25% and any interest accrued.  Her amount deposited is transferred back to the beneficiary or next of kin in Korea.  The amount of 25% of the principal amount is to be paid to Mr. Sweeney's mother. . . .

> 6.  In the event of the death of Park, Young Ja; Mr. Sweeney,
> or the current principal in this agreement, will contact the
> following person for the disposition of the agreement, principal
> and interest involved in the agreement.  The person is:
> Jeongwon Seo who is the daughter of Park Young Ja located as
> [sic] same address below.

*Id. ¶¶* 5-6.

While not expressed in the Agreement, Sweeney asserts that England

agreed to transfer Park's funds to Rothstein for a six percent commission.  Pl.'s

Ex. 1, Sweeney Decl. ¶ 8.  At Sweeney's house in Seoul, Park gave England

Korean bank notes worth approximately $2,000,000.  *Id.*  England took the

commission of $120,000 and gave $40,000 to Sweeney and $40,000 to Plaintiff.

*Id.*

From May through August 2007, England transferred a total of

$744,680.95 to Rothstein's bank account at First Hawaiian Bank ("FHB").  Pl.'s

Ex. 2, Rothstein Decl. ¶ 6.  In October 2007, Sweeney informed Rothstein that

approximately $1,200,000 would be transferred to him and asked for a second

account number to break up the transfers.  *Id.*  Rothstein suggested that England

instead send the additional monies to Plaintiff and Park's joint FHB account, but

Sweeney responded that England would prefer that Plaintiff not have access to the

monies.  *Id.* ¶ 9.  On October 16, 2007, Rothstein notified Sweeney that he had

been advised not to provide a second account number and to close his current FHB

account because it looks "as if there is something illegal going on."  Pl.'s Ex. 2,

Ex. A at NR00012.

Subsequently, Rothstein received a number of conflicting instructions

regarding the funds he was holding.  England told Rothstein to transfer the funds

back to him because he did not want the funds to go to Plaintiff, Pl.'s Ex. 2,

Rothstein Decl. ¶ 12; *see also* Pl.'s Ex. 2, Ex. A at NR00014, while Plaintiff

instructed Rothstein to transfer the monies to her and Park's joint FHB account

because she and Park had changed their minds about purchasing Hawaii property

after their visa applications were denied.  Pl.'s Ex. 2, Rothstein Decl. ¶ 11.

To assist in collecting Park's funds from Rothstein and England, on

October 19, 2007, Park executed a Power of Attorney ("October 2007 Power of

Attorney") naming Plaintiff  her "true and lawful attorney-in-fact" to collect her

monies from Rothstein and England:

1.　　Authority to Act.  The Agent is authorized to act for me under this Power of Attorney and shall exercise all powers in my best interests and for my welfare.
2.　　Powers of Agent.  The Agent shall have the full power and authority to manage and conduct all of my affairs, and to exercise my legal rights and powers . . . including the following:
■　　Collect.  To initially collect [$1,200,000] on a [$2,000,000] loan made to Raymond England,

6

> which was due and payable as of October 31, 2007.
> ■ Collect.  To collect [$750,000] held in the Norman account at a date agreed upon the agent.

Pl.'s Ex. 6.

Rothstein ultimately entered into a Settlement and Mutual Release Agreement with Plaintiff and Park in which he deposited the $744,860.96 into the Case Lombardi & Pettit Client Trust Account and Rothstein, Park and Plaintiff released each other from all claims relating to these monies or his actions as their real estate broker.  Pl.'s Ex. 2, Rothstein Decl. ¶ 21.  In a November 29, 2007 Affidavit, Park instructed her attorneys to transfer this money to her and Plaintiff's joint FHB account, which she recognized would give Plaintiff "full access to and use of the funds."  Pl.'s Ex. 4, Park Aff. ¶ 5.  Park further recognized that Sweeney and England still had not paid the $1,200,000 and "authorized [Plaintiff] to file a lawsuit against them to recover the rest of my US $2,000,000.00."  *Id.* ¶ 6.

Regarding the remaining $1,200,000, England told Sweeney that he deposited these funds into his FCU account in Seoul and transferred them into Certificates of Deposit.  *Id.*  England has refused to return these funds to Plaintiff and/or Park, but has nonetheless admitted in this action that the monies were to

7

remain in Certificate of Deposits pending further instructions from Park.  Pl.'s Ex. 5, England Aff. ¶ 9.

On April 3, 2008, Park passed away, *see* Doc. No. 54,[1] and Plaintiff now contends that the Interpleader Funds belong to her.  Park's only other child, Seo Kyoung Won, has purportedly released England, FCU and Plaintiff from any and all claims that she may have against them regarding these funds, waived any and all claims that she may have to the funds, and assigned any and all claims she may have to Plaintiff.  Pl.'s Ex. 9, ¶ 4.  Plaintiff also provided the opinion of Korean attorney, Min-Hyun Joe ("Min-Hyun"), that Park assigned her rights to these funds to Plaintiff.  Specifically, based on his interpretation of the October 2007 Power of Attorney, Park's November 2007 affidavit, a February 22, 2008 document, and his knowledge of Korean law, Min-Hyun opines that "Young Ja Park had an intention to have the investment monies (or claim) ultimately revert to [Plaintiff]" and "that Young Ja Park had an intention to transfer all of investment monies (or claims) to Jeong Won Seo."  Pl.'s Ex. 7 at 2.  Min-Hyun concludes that:

> [Plaintiff] is not just a messenger or agent for Young Ja Park, but shall be considered the transferee of the rights held by Young Ja Park.  Therefore it deems that Jeong Won Seo, as a

---

[1]  All citations to Docket Numbers are to Civil No. 07-00606 JMS/LEK.

> transferee, is able to independently exercise all rights in
> connection with the investment monies (or claims). . . .  The
> transfer may not be revoked by the unilateral acts of Young Ja
> Park because the rights have been validly transferred and the
> effect of the transfer is not nullified due to the death of Young
> Ja Park.

*Id.*

## B.     Procedural History

On December 17, 2007, Plaintiff and Park initiated this action against England, Sweeney,[2] and FCU,[3] and Plaintiff currently alleges claims titled fraudulent concealment, breach of contract, fraud and/or intentional misrepresentation, breach of fiduciary duty, constructive and/or resulting trust and/or equitable lien, injunction against further disposition of the funds, accounting, wrongful conversion and/or embezzlement, unjust enrichment, intentional and/or negligent infliction of emotional distress, disgorgement, assumpsit, punitive damages, and interpleader of the remaining funds in court.

------

[2] On April 11, 2008, Plaintiff's counsel filed on behalf of both Plaintiff and Park a Notice of Dismissal without prejudice as to all claims against Sweeney.  Doc. No. 36.  Given that Park passed away over a week prior to this date, the court presumes that this dismissal without prejudice is brought by Plaintiff only.

[3] On February 13, 2008, England filed an action against FCU in Florida state court alleging claims for conversion and money had and received, and seeking an injunction.  FCU removed the Florida action to the Middle District of Florida, which later transferred it to this district.  This action between England and FCU was assigned Civil No. 08-00158, and was consolidated with Civil No. 07-00606 on July 25, 2008.

On November 10, 2008, Plaintiff filed her Motion for Partial

Summary Judgment as to Count V of her SAC.  On November 13, 2008, England

filed a Statement of No Opposition.  A hearing was held on December 8, 2008.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has

carried its burden under Rule 56(c) its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts [and] come forward

with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).   When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121 (9th Cir. 2008) (stating that "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV.  DISCUSSION

Plaintiff argues that there is no genuine issue of material fact that she is entitled to the Interpleader Funds such that the court should grant summary judgment on her claim for a constructive trust.  The court disagrees.

Pursuant to Hawaii law,[4] "[a] constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 139, 552 P.2d 635, 638 (1976) (citing Restatement, Restitution § 160 (1937)); *see also DeMello v. Home Escrow, Inc.*, 4 Haw. App. 41, 48, 659 P.2d 759, 763-64 (1983) ("[A] constructive trust may be defined as a device utilized by equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." (citation and quotation signals omitted)).  "The policy basis of a constructive trust is to prevent the holder of the property from being unjustly enriched due to fraud, duress or other unconscionable conduct." *Id.* (citing 76 Am. Jur. 2d Trusts §§ 221, 222 (1975)).  Accordingly, "[t]he beneficial owner, in equity, has the right to have the title to the property transferred to himself if it is in the hands of the wrongdoer." *Peine v. Murphy*, 46 Haw. 233, 241, 377 P.2d 708, 713 (1962) (citations omitted). The court may impose a constructive trust only "where the evidence is clear and convincing that one party will be unjustly enriched if allowed to retain the entire property." *Maria v. Freitas*, 73 Haw. 266, 274, 832 P.2d 259, 264 (1992); *see*

---

[4] Without addressing which law applies, Plaintiff cites to Hawaii law for basic constructive trust principles.  For purposes of this Order only, the court applies Hawaii law.

*also Kam Oi Lee*, 57 Haw. at 140, 552 P.2d at 638 ("It is well established in this jurisdiction that a constructive trust will be imposed only when the evidence is clear and convincing.").

Applying these principles, Plaintiff has set forth evidence establishing that England is not entitled to the Interpleader Funds -- England admits that the monies he deposited into his FCU account were to remain in Certificate of Deposits pending further instructions from Park, Pl.'s Ex. 5, England Aff. ¶ 9, and the parties have presented no evidence that England has any rights to the funds.[5] Plaintiff has not established as a matter of law, however, that the Interpleader funds justly belong to her.

The Agreement itself does not give Plaintiff any rights to the Interpleader Funds.  Park gave England Korean bank notes worth approximately $2,000,000, Pl.'s Ex. 1, Sweeney Decl. ¶ 7, pursuant to the Agreement between Park, Sweeney, and England for England to transfer Park's "monetary funds to Hawaii in order to purchase condominiums from Norman Rothstein."  Pl.'s Ex. 3.

---

[5] The parties further agree that the total amount owed to England for his commission and attorneys' fees is $264,000.  March Decl. ¶ 14.  On its face, this amount seems excessive -- the parties provided no accounting of this amount and it remains unclear whether this agreement takes into account that England took his commission when he first received Park's monies.  *See* Pl.'s Ex. 1, Sweeney Decl. ¶ 8.  Further, Plaintiff presumably entered such agreement pursuant to the October 2007 Power of Attorney.  *See* Pl.'s Ex. 6.  The parties have not addressed, and the court does not determine, whether this Power of Attorney survives Park's death.

Plaintiff provided none of the funds, was not a party to the Agreement, and is not listed as a beneficiary to the Agreement.  Rather, Plaintiff served only as a witness and the only other time the Agreement mentions her is as a contact person in the event that Park passes away.  *See* Pl.'s Ex. 3.

Plaintiff argues that the Agreement listing her as a contact person in case of Park's death grants her the right to determine the disposition of the funds. *See* Pl.'s Mot. 13-14.  Based on a plain reading of the Agreement,[6] the court disagrees.  Paragraph 5 of the Agreement provides that in the event of Sweeney's or Park's death, Park's funds, "less 25% and any interest accrued"[7] are due to "the beneficiary or next of kin in Korea."[8]  Pl.'s Ex. 3, ¶ 5.  Paragraph 6 provides that if Park passes away, Sweeney will contact Plaintiff "for the disposition of the agreement, principal and interest involved in the agreement."  *Id.* ¶ 6.  These

---

[6] Plaintiff provides no discussion of which law applies to construction of the Agreement. For purposes of this Order, the court merely looks to its plain language and does not determine which law applies.

[7] In full, the agreement provides:
> 5. In the event of the death of Mr. Joseph Sweeney or Park, Young Ja, this agreement and note automatically becomes due and Park, Young Ja's deposit becomes payable for the full face value deposited into the First Hawaiian Bank less 25% and any interest accrued.  Her amount deposited is transferred back to the beneficiary or next of kin in Korea.  The amount of 25% of the principal amount is to be paid to Mr. Sweeney's mother.

Pl.'s Ex. 3.

[8] The Agreement does not define the phrase "the beneficiary or next of kin in Korea."

provisions in no way suggest that upon Park's death, Plaintiff is granted the unilateral power to determine the identity of Park's beneficiary and/or take the funds for herself.[9]  Rather, according to its plain words, the Agreement requires that the funds go to "the beneficiary or next of kin" and that Sweeney should contact Plaintiff to ensure that the funds are delivered to the beneficiary or next of kin.  Providing Plaintiff as a contact person makes common sense -- Sweeney has no way on his own to determine who the funds belong to and Plaintiff, as Park's daughter, is presumably privy to the distribution of Park's estate and can ensure that these funds are made part of such distribution.

The court further finds that Park's actions subsequent to the Agreement do not establish as a matter of law that Plaintiff is entitled to the Interpleader Funds.  Park granted Plaintiff power of attorney to act on her behalf as her agent to collect the funds from England and Rothstein, *see* Pl.'s Ex. 6, and also deposited the approximate $700,000 collected from Rothstein into Plaintiff and Park's joint FHB account where Plaintiff had "full access to and use of the

---

[9]  While not specifically argued by Plaintiff, the court notes that it is a question of fact whether Plaintiff is Park's beneficiary.  Plaintiff has presented evidence that her sister has disclaimed any interest in the Interpleader Funds, *see* Pl.'s Ex. 9, but other evidence suggests that Park was survived by a husband, two brothers and a granddaughter, and that there are disputes regarding distribution of Park's estate.  *See* Doc. No. 53, Exs. A-B.  Plaintiff has presented no evidence regarding the distribution of Park's assets upon her death, and the court will not assume that the Interpleader Funds automatically belong to Plaintiff simply because her sister allegedly disclaims any interest in the funds.

15

funds." Pl.'s Ex. 4, ¶ 5.  These actions by themselves do not address Park's intent as to the $1,200,000 held by England, and on their face do not establish a transfer of rights from Park to Plaintiff.

Despite no clear statements in any of these documents, Plaintiff nonetheless argues Park transferred her rights to Plaintiff, as explained in Min-Hyun's legal opinion.  *See* Pl.'s Ex. 7.  For several reasons, Min-Hyun's opinion is wholly insufficient to establish as a matter of law that Plaintiff is entitled to the Interpleader Funds.

First, and most importantly, Plaintiff cannot rely on a legal opinion to establish an ultimate issue of law.  In his opinion, Min-Hyun does not merely explain his basic understanding of Korean law, but goes a step further to opine that pursuant to Korean law and based on the October 19, 2007 Power of Attorney, the November 29, 2007 affidavit, and a February 22, 2008 document, Park assigned her rights to the Interpleader Funds to Plaintiff.  The meaning of these documents and whether Park assigned her rights to Plaintiff are not fact issues that an expert can resolve, but involve ultimate issues of law that only the court can determine.  Plaintiff's suggestion that the court should simply adopt the legal opinions of a random attorney in Korea is contrary to law.  *See Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("It is

16

well-established . . . that expert testimony concerning an ultimate issue is not per se improper. . . .   However, an expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law."); *see also McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (finding that expert testimony "cannot be used to provide legal meaning or interpret [documents] as written"); *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) ("Experts interpret and analyze factual evidence.  They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations." (citation and quotation signals omitted)); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (stating that matters of law are "inappropriate subjects for expert testimony").

Further, even if the court did consider this opinion, it suffers from multiple defects.  First, Min-Hyun provides no basis for his conclusion that Park transferred her rights to the funds to Plaintiff -- his opinion is wholly conclusory, he provides no explanation why Korean law should apply, and he fails to support his opinion with any specific Korean law.  Second, Min-Hyun appears to misstate the very content of the documents on which he relies.  Min-Hyun acknowledges that the October 2007 Power of Attorney by itself is insufficient to act as an

assignment of rights, and therefore relies on the November 29, 2007 affidavit as indicating a transfer of rights.[10]  Min-Hyun quotes the November 29, 2007 affidavit as "expressly stat[ing], 'Jeong Won Seo may use the monies collected at its own discretion,' and 'Jeong Won Seo may bring a lawsuit to collect US $2,000,000."  Pl.'s Ex. 7.  The November 29, 2007 affidavit provided to the court, however, instructs that Plaintiff is provided access to the approximate $700,000 collected from Rothstein only (as opposed to the entire $2,000,000), and that Plaintiff is authorized "to file a lawsuit against [Sweeney and England] to recover the rest of *my* US $2,000,000.00."  *Id.* ¶ 6 (emphasis added).  Nowhere does the Affidavit state that Plaintiff should have access to *all* funds once collected.

Finally, glaringly absent from the documents Min-Hyun reviewed is the Agreement itself.  *See* Pl.'s Ex. 7 (listing documents reviewed).  The Agreement does not contemplate that Plaintiff would receive any funds and per the Agreement, the funds go to "the beneficiary or next of kin in Korea."  *See* Pl.'s Ex. 3, ¶ 5.  To the extent that Park later decided that Plaintiff should receive all the funds, the Agreement requires that "any future changes, alterations, additions or addendums to this Agreement shall only be done when agreed to in signatory form

---

[10]  Plaintiff did not submit the February 22, 2008 document to the court, providing an additional reason why the court will not rely on the Min-Hyun opinion.

by the individuals as shown in this document." *Id.*  There is no evidence on the record that the parties amended the Agreement.

In sum, Plaintiff has failed to establish as a matter of law that she is entitled to the Interpleader Funds, whether based on the Agreement itself or based on any actions by Park.

## V.  CONCLUSION

Based on the above, the court DENIES Plaintiff's Motion for Partial Summary Judgment on Count V.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 12, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Won et al. v. England et al.*, Civ. No. 07-00606 JMS/LEK & Civ. No. 08-00158 JMS/LEK,
Order Denying Without Prejudice Plaintiff's Motion for Partial Summary Judgment as to Count
V of the Second Amended Complaint