IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SEO KYOUNG WON, individually and as personal representative of the estate of PARK YOUNG JA, | ) ) ) |
| | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| RAYMOND L. ENGLAND and USA FEDERAL CREDIT UNION, | ) ) ) |
| Defendants. | ) ) |
| _____ | ) |
| | ) |
| RAYMOND ENGLAND, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| USA FEDERAL CREDIT UNION, a Federal Charter credit union, | ) ) ) |
| Defendant. | ) ) |
| _____ | ) |

CIVIL NO. 07-00606 JMS/LEK
CIVIL NO. 08-00158 JMS/LEK

ORDER GRANTING IN PART AND
DENYING IN PART FEDERAL
CREDIT UNION'S AMENDED
MOTION TO DISMISS RAYMOND
ENGLAND'S COMPLAINT AND
ORDERING SUPPLEMENTAL
BRIEFING

## ORDER GRANTING IN PART AND DENYING IN PART FEDERAL CREDIT UNION'S AMENDED MOTION TO DISMISS RAYMOND ENGLAND'S COMPLAINT AND ORDERING SUPPLEMENTAL BRIEFING

# I.  __INTRODUCTION__

On February 13, 2008, Raymond England ("England") filed a complaint in Florida state court asserting claims against the USA Federal Credit Union (the "FCU") for conversion, money had and received, and injunctive relief (the "Florida Action").  England's claims stem from the FCU's refusal to give England access to money from three certificates of deposit held jointly by England and his wife, Monette England ("Monette"), after the FCU learned of a competing claim to these funds in an action brought in this court by Park Young Ja ("Park") and Jasmine Seo ("Seo") against both England and the FCU (the "Won Action"). The Florida Action was removed to federal court, transferred to this court, and is now consolidated with the Won Action.

Currently before the court is the FCU's Motion to Dismiss England's claims for, among other things, failure to join an indispensable party and failure to state a claim.  Based on the following, the court DENIES the FCU's Motion without prejudice to the extent it seeks to strike England's Amended Complaint, GRANTS the FCU's Motion to the extent it argues that Monette is a necessary party, and orders further briefing regarding whether Monette can be joined to this action and whether summary judgment should be granted in favor of the FCU.

2

## II.  BACKGROUND

### A.    Factual Background

England's complaints[1] assert that England owned three "shared certificates" ("CDs") in the principal amounts of $500,000, $500,000, and $200,000, which matured on January 29, 2008.  Compl. ¶ 12; Am. Compl. ¶ 13. As of January 29, 2008, the combined value of the CDs totaled $1,213,176.84. Compl. ¶ 12; Am. Compl. ¶ 13.

The FCU had notified England that upon maturity, it would transfer the funds into his designated money market account unless directed otherwise. Compl. ¶¶ 13-14; Am. Compl. ¶¶ 14-15.  Upon maturity, however, the FCU did not deposit the funds into a money market account and instead purchased new CDs.  Compl. ¶ 15; Am. Compl. ¶ 16.  As alleged in the Complaints, the FCU refuses to return the monies to England, Compl. 16, Am. Compl. ¶ 19, and these funds have been in fact interpleaded to this court.

England has since stated in a sworn statement that the $1,200,000 in his CDs was not his money, but "was to remain there pending further instructions from Mrs. Park."  Doc. No. 37, England Aff. ¶ 9.  Further, at the time the FCU

---

[1]  As discussed below, the parties dispute whether England properly filed an Amended Complaint and the court does not resolve this issue at this time.

refused to follow England's instructions and/or return the money to England, the

FCU had been served with the complaint in the Won Action claiming ownership of

the same funds.  *See* Doc. No. 4.  Finally, the FCU has presented evidence that the

CDs at issue were held jointly between Endland and Monette.  Rosas Aff. ¶¶ 3-4.

## B.     Procedural Background

On February 13, 2008, England filed his Complaint in the Florida

Action.  Subsequently, the FCU removed the Florida Action to the Middle District

of Florida and the FCU filed a motion to dismiss.  In the meantime, Park and one

of her daughters, Seo, filed the Won Action against England and the FCU, and the

FCU interpleaded the funds at issue to this court.

The March 20, 2008 Interpleader Order provides that pursuant to 28

U.S.C. § 2361, England is "restrained from instituting or prosecuting any

proceeding in any State or United States court affecting the property, instrument or

obligation involved in this interpleader action."[2]  Doc. No. 26.  On March 26,

2008, England nonetheless filed an Amended Complaint in the Florida Action,

which was subsequently transferred to this court and consolidated with the Won

Action.

---

[2]  At the time of the Interpleader Order, England disputed whether he was properly served
the Complaint in the Won Action.

4

On April 3, 2008, Park passed away.  *See* Doc. No. 54.  On August 19, 2008, the FCU filed its Amended Motion to Dismiss England's Complaint. Doc. No. 108.  Seo filed a Motion for Joinder on September 15, 2008, England filed an Opposition on September 23, 2008, and the FCU filed a Reply on September 25, 2008.  On November 4, 2008, the FCU withdrew its Motion without prejudice because the parties believed they were close to settling the action. Ultimately, settlement did not occur and in the meantime, another of Park's daughters, Seo Kyoung Won ("Kyoung"), intervened in this action individually and as a personal representative of Park's estate.

On May 18, 2009, the FCU filed a statement renewing its Motion to Dismiss England's Complaint, and the court considers the briefing previously filed by the parties as renewed as well.  On June 1, 2009, Seo Kyoung Won filed a statement of no opposition to the FCU's Motion.[3]  On June 5, 2009, Seo dismissed her claims without prejudice.

---

[3] Pursuant to Local Rule 7.2(d), the court finds that it can determine this Motion without oral argument.

## III.  STANDARDS OF REVIEW

### A.      Rule 12(b)(7)

Rule 12(b)(7) provides that an action may be dismissed for failure to join a party under Rule 19.  In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings.  *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure: Civil 3d. § 1359 at 68 (2004).

### B.      Summary Judgment[4]

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of

---

[4]  The FCU styles its Motion as a motion to dismiss, but submits evidence such that the court outlines the standard of review on summary judgment instead of Federal Rule of Civil Procedure 12(b)(6).  Further, as explained below, the court provides England the opportunity to respond to the FCU's arguments on summary judgment.

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).   "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 259 (1986) (stating that a party cannot "rest on the mere allegations or denials of his pleading" in opposing summary judgment).

## IV.  ANALYSIS

The FCU's Motion and Reply raise a number of issues, including what complaint is before the court, whether Monette is an indispensable party, and whether England can state a claim against the FCU based on the FCU's handling of funds that the FCU has notice that they are the subject of litigation and that England may not own.  The court addresses each of these issues in turn.

## A.  The Court Will Not Determine Which Complaint Is at Issue on the FCU's Motion

Before the court turns to the merits of the FCU's arguments, the court is confronted with the threshold issue of which of England's complaints is at issue. The FCU asserts that England was not permitted to file an Amended Complaint because the Interpleader Order prevented him from prosecuting any proceeding involving the interpleader funds.  FCU Reply 5-6.  In comparison, England argues that the Interpleader Order was flawed such that the court could not enjoin England from amending his Complaint.  England Opp'n 5-7.  England has further indicated that he plans on filing a motion to vacate the Interpleader Order if the court finds that it has personal jurisdiction over him.[5]

The FCU's Motion to Dismiss is not the proper vehicle to present arguments that collaterally attack the Interpleader Order.  The court therefore DENIES without prejudice the FCU's Motion to Dismiss to the extent it seeks to strike the Amended Complaint.

## B.  The FCU's Arguments for Dismissal

Even though the court does not determine which complaint is at issue, the FCU presents arguments that apply to equally to both complaints.  Given that

---

[5]  By separate order, the court DENIES England's Motion to Dismiss for lack of personal jurisdiction.

trial is quickly approaching, it is in the interest of the parties that the court address these issues now.

### 1.     *Failure to Join an Indispensable Party*

The FCU argues that Monette is an indispensable party to this action and should either be joined as a party pursuant to Rule 19(a), or, if joinder is not feasible, the action dismissed pursuant to Rule 19(b).

Rule 19 requires the court to consider three successive questions:

> First, the court must determine whether a nonparty should be joined under Rule 19(a).  We and other courts use the term "necessary" to describe those "[p]ersons to [b]e [j]oined if[f]easible."  Fed. R. Civ. P. 19(a). . . .
>
> If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. . . .
>
> Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed. . . .  Rule 19 uses the word "indispensable" only in a conclusory sense, that is, a person is "regarded as indispensable" when he cannot be made a party and, upon consideration of the factors [in Rule 19(b)], it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it.

*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005) (citations and quotation signals omitted).

For the first inquiry, "necessary" is understood as defining those "'whose joinder in the action is *desirable*' in the interests of just adjudication." *Id.* at 779 (quoting Fed. R. Civ. P. 19 Advisory Committee Note (1966)).  The court "must determine whether the absent party has a legally protected interest in the suit," and, if so, whether "that interest will be impaired or impeded by the suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *see also Peabody W. Coal Co.*, 400 F.3d at 779 (stating that necessary parties are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act" (citation and quotation signals omitted)).

In this action, the CD accounts were held jointly by Monette and England.  Joint obligees, such as Monette and England, are usually considered not only necessary parties, but indispensable parties under Rule 19:

> Courts [finding joint obligees indispensable parties] generally have reasoned that the duty or promise was made to the obligees jointly, not separately, and that mandatory joinder is justified.  Since it typically is in the interest of the obligees to join in enforcement of their common right, this requirement does not impose any hardship, especially in light of the court's power to join an absent person as an involuntary plaintiff. Revised Rule 19 does give the court flexibility to allow an action to go forward without a joint obligee when no prejudice would result either to the parties or the absentee and effective relief can be granted.

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1613 (3d ed. 2001) (footnotes omitted); *see also Nike, Inc. v. Commercial Iberica de Exclusivas Desportivas*, *S.A.*, 20 F.3d 987, 991 (9th Cir.1994) (finding that joint obligees are indispensable parties in an action to enforce obligation); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc*., 11 F.3d 399, 408 (3d Cir. 1993) ("Joint obligees . . . usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action."); *Harrell & Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977).

Applying these principles, the court finds that Monette is a necessary party.  As a joint obligee of the CDs, Monette has an interest in the funds at issue and therefore has an interest in this controversy.  Further, if England succeeds on his claims against the FCU and Monette is not a party to this action, it appears that any judgment to England would cut off any rights Monette had in the funds as a joint obligee.  Accordingly, without Monette's participation, the court cannot effect a proper judgment that takes into account her interest in the funds.

In opposition, England baldly asserts that Monette "has not and does not claim any interest in the funds that have been interpleaded into this Court" and that she is not a necessary party because the funds could be paid to, or on the order

of, either of them.  England Opp'n 10.  England's argument misses the mark.

Whether the funds could have been paid to either or both Monette and England

while they were held in CDs does not change a critical fact -- Monette had an

interest in the funds as a joint obligee and could bring an action against the FCU in

her own right based on the same allegations raised by England.[6]  Monette is a

necessary party.

While the court finds that Monette is a necessary party, neither FCU

nor England address whether joining Monette is feasible, and if not, whether she is

an indispensable party such that this action should be dismissed.  Accordingly, the

court orders the parties to submit supplemental briefing addressing this issue.

**B.     Summary Judgment**

The court recognizes that given the court's finding that Monette is a

necessary party, England's claims may be subject to dismissal.  In the event that

the Rule 19 issue does not result in dismissal of England's claims, however, the

court addresses FCU's additional argument for dismissal.

The FCU argues that England's claims fail because the FCU validly

withheld funds after it learned of the Won Action, FCU Mot. 4-5; FCU Reply 4-5,

---

[6] Such potential prejudice to the FCU of facing multiple litigations is precisely what
Rule 19 seeks to prevent.

and England has admitted that the funds at issue do not belong him.  *See* Doc. No.

37, England Aff. ¶ 9.  The FCU was first served the complaint in the Won Action

on January 11, 2008.  Doc. No. 4.  The Complaint asserted that England defrauded

the Won Plaintiffs of more than $2 million and that England and other defendants

had represented to the Won Plaintiffs that approximately $1.2 million of these

funds were deposited with the FCU in England's name in either an account or

certificates of deposit.  *See* Doc. No. 1, Compl. ¶¶ 1, 22.  On or around January 29,

2008, after being served the complaint in the Won Action, the FCU refused to

follow England's instructions regarding these funds or return them to him.  *See*

Compl. ¶¶ 15-16; Am. Compl. ¶¶ 16, 19.  Instead, the FCU moved to interplead the

funds to the court on February 20, 2008.  *See* Doc. No. 11.  Only two months later,

on April 17, 2008, England stated in a sworn statement that the $1,200,000 at issue

in this action was not his money, but "was to remain there pending further

instructions from Mrs. Park."  Doc. No. 37, England Aff. ¶ 9.

England asserts claims against the FCU for conversion and money had

and received.  "[A] conversion is an unauthorized act which deprives another of his

property permanently or for an indefinite time."  *Mayo v. Allen*, 973 So.2d 1257,

1258-59 (Fla. App. 2008) (citations omitted).[7]  "'In Florida, an action for conversion is regarded as a possessory action and the plaintiff must have a *present or immediate* right of possession of the property in question.'"  *United States v. Bailey*, 419 F.3d 1208, 1214 (11th Cir. 2005) (quoting *Page v. Matthews*, 386 So.2d 815, 816 (Fla. App. 1980) (emphasis added)).  A claim for money had and received, "or the more modern action for unjust enrichment, is an equitable remedy requiring proof that money had been paid due to fraud, misrepresentation, imposition, duress, undue influence, mistake, or as a result of some other grounds appropriate for intervention by a court of equity."  *Hall v. Humana Hosp. Daytona Beach*, 686 So.2d 653, 656 (Fla. App. 1996) (citations omitted).

Viewing the evidence in a light most favorable to England, it does not appear that England can establish a genuine issue of material fact supporting either of his claims.  The evidence presented establishes that FCU did not follow England's instructions and ultimately interpleaded the funds to this court only after learning of the Won Plaintiffs' competing claim to the funds.  FCU took these steps not to deprive the rightful owner of these funds, but rather to preserve these funds until the rightful owner could be determined.  Under these facts, England had no immediate right of possession to the funds, especially where he has admitted

---

[7]  Both parties agree that Florida law applies to England's claims.

that the funds in fact were owned by Mrs. Park.[8]  Further, these facts provide no

grounds whatsoever for intervention by a court of equity on a claim for money had

and received.

To find otherwise would expose a financial institution to liability

regardless of the course it followed.  Upon learning of the Won Action, the FCU

had three options: pay the funds to England, pay the funds to the Won Plaintiffs, or

interplead the funds.  Had the FCU provided the funds to England, it would have

certainly faced liability to the Won Plaintiffs if they were adjudged the owners of

the funds (a fact apparently agreed to by England).  Under the second option, the

FCU would face liability to England for breaching their agreement regarding the

funds.  Applying the third option, the FCU could, as it did, preserve the funds by

refusing any claimant access to them and interpleading them to the court.  By

interpleading the funds, the FCU preserved *both* England's and the Won Plaintiffs'

claims to the funds.  Under this latter option, if England could nonetheless bring an

---

[8] While England has asserted that he may be entitled to some portion of the interpleaded funds, the court notes that a conversion claim for money requires proof that the funds are specific and identifiable. *Navid v. Uiterwyk Corp.*, 130 B.R. 594, 595 (M.D. Fla.1991) (citing *Allen v. Gordon*, 429 So.2d 369 (Fla. App. 1983)); *see also Gasparini v. Pordomingo*, 972 So.2d 1053, 1056 (Fla. App. 2008) ("For money to be the object of conversion 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" (citation omitted)).  There is no evidence that England identified those specific funds to the FCU; rather, it appears that he demanded access to all of the funds despite knowing that all of them did not belong to him.

action against the FCU, then the FCU would face potential liability regardless of what it chose to do.  The law cannot support such an absurd result.

Given the analysis above, the court does not believe at this time that there is a genuine issue of material fact to support England's claims.  The court will nonetheless allow England to submit supplemental briefing addressing these issues given that the court views the FCU's arguments as raising summary judgment but England addressed the Rule 12(b)(6) standard only, and the FCU made some of these arguments for the first time in its Reply.

## V.  <u>CONCLUSION</u>

Based on the above, the court DENIES the FCU's Motion without prejudice to the extent it asks the court to strike England's Amended Complaint, and GRANTS the FCU's Motion to the extent it argues that Monette England is a necessary party.  The court further orders both parties to submit supplemental briefing addressing whether it is feasible to add Monette England as a party and if not, whether she is indispensable.  England may also submit supplemental briefing addressing the FCU's argument that England's claims fail as a matter of law

///

///

16

because he has no interest in the funds at issue.  The parties' simultaneous briefing is due by June 26, 2009.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 12, 2009.



    /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Won et al. v. England et al.*, Civ. No. 07-00606 JMS/LEK, Order Granting in Part and Denying in Part Federal Credit Union's Amended Motion to Dismiss Raymond England's Complaint and Ordering Supplemental Briefing