IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SEO KYOUNG WON, individually and as personal representative of the estate of PARK YOUNG JA, <br><br>        Plaintiff, <br><br>  vs. <br><br>RAYMOND L. ENGLAND and USA FEDERAL CREDIT UNION, <br><br>        Defendants. <br>_____ <br><br>RAYMOND ENGLAND, <br><br>        Plaintiff, <br><br>  vs. <br>USA FEDERAL CREDIT UNION, a Federal Charter credit union, <br><br>        Defendant. <br>_____ | CIVIL NO. 07-00606 JMS/LEK <br>CIVIL NO. 08-00158 JMS/LEK <br><br>ORDER GRANTING USA FEDERAL CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT ON RAYMOND ENGLAND'S CLAIMS AGAINST USA FEDERAL CREDIT UNION |

**ORDER GRANTING USA FEDERAL CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT ON RAYMOND ENGLAND'S CLAIMS AGAINST USA FEDERAL CREDIT UNION**

### I. INTRODUCTION

On February 13, 2008, Raymond England ("England") filed a complaint in Florida state court asserting claims against the USA Federal Credit

Union (the "FCU") for conversion, money had and received, and injunctive relief (the "Florida Action"). England's claims stem from the FCU's refusal to give England access to money from three certificates of deposit held jointly by England and his wife, Monette England ("Monette"), after the FCU learned of a competing claim to these funds in an action brought in this court by Park Young Ja ("Park") and Jasmine Seo ("Jasmine") against both England and the FCU (the "Won Action"). The Florida Action was removed to federal court, transferred to this court, and is now consolidated with the Won Action.

Currently before the court is the FCU's Motion for Summary Judgment on England's claims for conversion and money had and received (the "FCU's Motion"). The FCU had originally filed its Motion as a motion to dismiss, but the court construed it as raising summary judgment and required supplemental briefing. After a review of the supplemental briefing and based on the following, the court GRANTS the FCU's Motion for Summary Judgment on England's claims.[1]

///

///

---

[1] Pursuant to Local Rule 7.2(d), the court finds that it can determine this Motion without oral argument.

## II. BACKGROUND

**A.     Factual Background**

England's Complaints[2] assert that England owned three "shared certificates" ("CDs") in the principal amounts of $500,000, $500,000, and $200,000, which matured on January 29, 2008.  Compl. ¶ 12; Am. Compl. ¶ 13.  As of January 29, 2008, the combined value of the CDs totaled $1,213,176.84.  Compl. ¶ 12; Am. Compl. ¶ 13.

The FCU had notified England that upon maturity, it would transfer the funds into his designated money market account unless directed otherwise.  Compl. ¶¶ 13-14; Am. Compl. ¶¶ 14-15.  Upon maturity, however, the FCU did not deposit the funds into a money market account and instead purchased new CDs.  Compl. ¶ 15; Am. Compl. ¶ 16.  As alleged in the Complaints, the FCU refused to return the monies to England, Compl. 16, Am. Compl. ¶ 19, and these funds have been in fact interpleaded to this court.

England asserts that he received these funds pursuant to a Promissory Agreement in which England agreed to convert the equivalent of $2,000,000 U.S. dollars in Korean Won into U.S. dollars for Park.  Doc. No. 37, England Aff. ¶¶ 9-

---

[2] The parties dispute whether England properly filed an Amended Complaint and the court does not resolve this issue at this time because regardless of which complaint is before the court, summary judgment in favor of the FCU is warranted.

11. England has since stated in a sworn statement that the $1,200,000 in his CDs "was to remain there pending further instructions from Mrs. Park." *Id.* ¶ 9. Further, at the time the FCU refused to follow England's instructions and/or return the money to England, the FCU had been served with the complaint in the Won Action claiming ownership of the same funds. *See* Doc. No. 4.

**B.     Procedural Background**

On February 13, 2008, England filed his Complaint in the Florida Action. Subsequently, the FCU removed the Florida Action to the Middle District of Florida and the FCU filed a motion to dismiss. In the meantime, Park and one of her daughters, Jasmine, filed the Won Action against England and the FCU, and the FCU interpleaded the funds at issue to this court.

The March 20, 2008 Interpleader Order provides that pursuant to 28 U.S.C. § 2361, England is "restrained from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in this interpleader action."[3]  Doc. No. 26.  On March 26, 2008, England nonetheless filed an Amended Complaint in the Florida Action,

---

[3] At the time of the Interpleader Order, England disputed whether he was properly served the Complaint in the Won Action.

which was subsequently transferred to this court and consolidated with the Won Action.

On April 3, 2008, Park passed away. *See* Doc. No. 54. On August 19, 2008, the FCU filed its Amended Motion to Dismiss England's Complaint. Doc. No. 108. Jasmine filed a Motion for Joinder on September 15, 2008, England filed an Opposition on September 23, 2008, and the FCU filed a Reply on September 25, 2008. On November 4, 2008, the FCU withdrew its Motion without prejudice because the parties believed they were close to settling the action. Ultimately, settlement did not occur and in the meantime, another of Park's daughters, Seo Kyoung Won ("Kyoung"), intervened in this action individually and as a personal representative of Park's estate.

On May 18, 2009, the FCU filed a statement renewing its Motion to Dismiss England's Complaint, and the court considered the briefing previously filed by the parties as renewed as well. On June 1, 2009, Kyoung filed a statement of no opposition to the FCU's Motion. On June 5, 2009, Jasmine dismissed her claims without prejudice.

On June 12, 2009, the court entered its Order on the FCU's Motion (1) denying the FCU's Motion without prejudice to the extent it seeks to strike England's Amended Complaint, (2) granting the FCU's Motion to the extent it

argues that Monette is a necessary party, and (3) notifying the parties that it considered FCU's Motion a motion for summary judgment and ordering further briefing on, among other things, whether summary judgment should be granted in favor of the FCU.[4]  On June 26, 2009, both the FCU and England filed their supplemental briefing.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that

---

[4] The court also ordered the parties to brief whether Monette was an indispensable party, but because the court finds that summary judgment should be granted on England's claims, the court does not resolve this issue.

6

there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 259 (1986) (stating that a party cannot "rest on the mere allegations or denials of his pleading" in opposing summary judgment).

## IV. ANALYSIS

England asserts claims against the FCU for conversion and money had and received. "[A] conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Mayo v. Allen*, 973 So.2d 1257, 1258-59 (Fla. App. 2008) (citations omitted).[5] "'In Florida, an action for conversion is regarded as a possessory action and the plaintiff must have a *present or immediate* right of possession of the property in question.'" *United States v. Bailey*, 419 F.3d 1208, 1214 (11th Cir. 2005) (quoting *Page v. Matthews*, 386 So.2d 815, 816 (Fla. App. 1980) (emphasis added)). A claim for money had and received, "or the more modern action for unjust enrichment, is an equitable remedy requiring proof that money had been paid due to fraud, misrepresentation, imposition, duress, undue influence, mistake, or as a result of some other grounds

---

[5] Both parties agree that Florida law applies to England's claims.

appropriate for intervention by a court of equity." *Hall v. Humana Hosp. Daytona Beach*, 686 So.2d 653, 656 (Fla. App. 1996) (citations omitted).

The FCU argues that summary judgment should be granted on England's claims because England has admitted that the funds at issue do not belong him, *see* Doc. No. 37, England Aff. ¶ 9, and the FCU validly withheld funds after it learned of the Won Action, FCU Mot. 4-5; FCU Reply 4-5.  The court agrees that England has failed to establish a genuine issue of material fact in support of his claims for both these reasons.

First, both of England's claims require that England have some interest to the money at issue, but England has admitted that the funds at issue do not belong him.  *See* Doc. No. 37, England Aff. ¶ 9.  In opposition, England argues that he has an interest in a portion of the funds to cover a 6% commission he was supposed to receive and his legal fees which Park allegedly agreed to pay.  England Supplemental Opp'n 4-5.  Despite this explanation, England has failed to come forward with any actual *evidence* raising a genuine issue of material fact that he and Park agreed to such arrangement.

Specifically, England points to Kyoung's Second Amended Complaint to show the terms of their arrangement, but it is unverified and not evidence at the summary judgment stage.  *Chapman v. Pier 1 Imports*, --- F.3d --- ,

2009 WL 1839011 at *5 (9th Cir. June 29, 2009) (stating that unverified complaint cannot be considered as relevant evidence and does not create issues of fact); *Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006) (stating that "complaint . . . cannot be considered as evidence at the summary judgment stage because it is unverified").  England also points to his Answer and Counterclaim, but Federal Rule of Civil Procedure 56(e)(2) makes plain that England cannot rely on his own pleading.  *See* Fed. R. Civ. P. 56(e)(2) ("[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather its response must -- by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.").  Finally, England relies on his Affidavit, but it states only that "[c]ontrary to the allegations in the Second Amended Complaint, I never received any payment or commission for my services pursuant to the Promissory Agreement." Doc. No. 37, England Aff. ¶ 9.  Viewing the Affidavit in a light most favorable to England, it does not establish that he and Park formed any agreement that England would receive a commission or payment for legal expenses.  Accordingly, England has not established a genuine issue of material fact that he is entitled to any portion of the funds the FCU allegedly withheld from England.

    The court further finds that summary judgment is warranted because there is no genuine issue of material fact that the FCU refused England access to

the funds and interpleaded them to this court only to preserve these funds until the rightful owner was determined. The FCU was first served the Complaint in the Won Action on January 11, 2008. Doc. No. 4. The Complaint asserted that England defrauded the Won Plaintiffs of more than $2 million and that England and other defendants had represented to the Won Plaintiffs that approximately $1.2 million of these funds were deposited with the FCU in England's name in either an account or certificates of deposit. *See* Doc. No. 1, Compl. ¶¶ 1, 22. On or around January 29, 2008, after being served the Complaint in the Won Action, the FCU refused to follow England's instructions regarding these funds or return them to him. *See* Compl. ¶¶ 15-16; Am. Compl. ¶¶ 16, 19. Instead, the FCU moved to interplead the funds to the court on February 20, 2008. *See* Doc. No. 11. Only two months later, on April 17, 2008, England stated in a sworn statement that the $1,200,000 at issue in this action was not his money, but "was to remain there pending further instructions from Mrs. Park." Doc. No. 37, England Aff. ¶ 9.

   The evidence presented establishes that the FCU did not follow England's instructions and ultimately interpleaded the funds to this court only after learning of the Won Plaintiffs' competing claim to the funds. The FCU took these steps not to deprive the rightful owner of these funds, but rather to preserve these funds until the rightful owner could be determined. Under these facts, England had

no immediate right of possession to the funds, especially where he has admitted that the funds in fact were owned by Mrs. Park.  Further, these facts provide no grounds whatsoever for intervention by a court of equity on a claim for money had and received.

To find otherwise would expose a financial institution to liability regardless of the course it followed.  Upon learning of the Won Action, the FCU had three options: pay the funds to England, pay the funds to the Won Plaintiffs, or interplead the funds.  Had the FCU provided the funds to England, it would have certainly faced liability to the Won Plaintiffs if they were adjudged the owners of the funds (a fact apparently agreed to by England).  Under the second option, the FCU would face liability to England for breaching their agreement regarding the funds.  Applying the third option, the FCU could, as it did, preserve the funds by refusing any claimant access to them and interpleading them to the court.  By interpleading the funds, the FCU preserved *both* England's and the Won Plaintiffs' claims to the funds.  Under this latter option, if England could nonetheless bring an action against the FCU, then the FCU would face potential liability regardless of what it chose to do.  The law cannot support such an absurd result.  Accordingly, the court GRANTS the FCU's Motion for Summary Judgment on England's claims.

## V.  **CONCLUSION**

Based on the above, the court GRANTS the FCU's Motion for Summary Judgment on England's claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 30, 2009.



       /s/ J. Michael Seabright
       J. Michael Seabright
       United States District Judge

*Won et al. v. England et al.*, Civ. No. 07-00606 JMS/LEK, Order Granting USA Federal Credit Union's Motion for Summary Judgment on Raymond England's Claims Against USA Federal Credit Union